UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

SEP 2 1 2005

EUGENE R. WEDOFF
BANKRUPTCY JUDGE

| | |
|---|---|
| In re: | ) |
| | ) |
| UAL Corporation, et al., | ) |
| | ) |
| Debtors. | ) |
| | ) |
| Pension Benefit Guaranty | ) |
| Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| United Air Lines, Inc., as Plan | ) |
| Administrator for the United Airlines Pilot | ) |
| Defined Benefit Pension Plan, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| Air Line Pilots Association, | ) |
| International, United Retired Pilots | ) |
| Benefit Protection Association, | ) |
| Roger D. Hall, Dennis D. Dillon, | ) |
| Gerard Terstiege, Eugene M. | ) |
| Cummings, Raymond P. Fink, James | ) |
| M. Krasno and William L. | ) |
| Rutherford, | ) |
| | ) |
| Intervenors. | ) |

Chapter 11

Case No.     02 B 48191

Adversary No. 05 A 00481

## MEMORANDUM OF DECISION

This adversary proceeding, arising in the administratively consolidated Chapter 11

cases of United Air Lines, Inc. ("United") and its related entities, is before the court for ruling

on the motion of the Pension Benefit Guaranty Corporation ("PBGC") for summary

judgment.  The motion seeks an order (1) terminating the United Airlines Pilot Defined

Benefit Pension Plan (the "Pilot Plan"); (2) establishing December 30, 2004 as the termination date of the Pilot Plan under 29 U.S.C. § 1348(a)(4); and (3) requiring United and all other persons who have possession, custody or control of all records, assets and property of the Pilot Plan to deliver them to PBGC. The third request is not in dispute; the parties acknowledge that if the Pilot Plan is terminated, the records, assets and property of the Pilot Plan must be turned over to PBGC. There is a dispute, however, regarding plan termination and the termination date.

As discussed below, PBGC is not entitled to summary judgment with respect to plan termination. In the absence of an agreement with the plan administrator, PBGC must prove at trial, by a preponderance of the evidence, that the plan must be terminated to avoid "unreasonable increase in the liability of the fund." 11 U.S.C. § 1342(c). However, as to the establishment of a December 30, 2004 termination date, if PBGC satisfies its burden of proof and the Pilot Plan is terminated, PBGC is entitled to summary judgment on the establishment of a December 30, 2004 termination date because the undisputed facts demonstrate that participants of the Pilot Plan received adequate notice of termination by that date, and that date serves the interests of PBGC.

Accordingly, PBGC is entitled to partial summary judgment pending the outcome of a trial on the merits of plan termination.

### Jurisdiction

Federal district courts have exclusive jurisdiction over bankruptcy cases. 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), district courts may refer bankruptcy cases to the bankruptcy judges for their district, and, by Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has made such a reference of the pending cases. When presiding over a referred case, the bankruptcy court has jurisdiction, under 28 U.S.C. § 157(b)(1), to enter appropriate orders and judgments in core proceedings within the case.

PBGC's adversary is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning estate administration) and (E) (orders to turn over property of the estate). This court may therefore enter a final judgment. *In re Smith*, 848 F.2d 813, 816 (7th Cir. 1988).

## Factual Background

The background facts relevant to the pending motion are not in dispute.[1]

On December 9, 2002, United and twenty-seven of its related corporations filed the voluntary Chapter 11 cases now before the court. (JPS at 22.) United is the plan administrator and contributing sponsor of the Pilot Plan under ERISA. (*Id.* at 21.) Approximately 15,000 active, retired and terminated United employees are participants in the Pilot Plan. (*Id.* at 22.) Prior to December 29, 2004, United indicated that it needed to terminate and replace all of its defined benefit pension plans in order to successfully emerge from bankruptcy. (*Id.* at 22.)

The Air Line Pilots Association, International ("ALPA"), as the exclusive collective bargaining representative of United's pilots, is a party, with United, to a collective bargaining agreement that established the terms and conditions of employment for United's pilots, including pension benefits provided under the Pilot Plan. (JPS at 21-22.) The United Retired

---

[1] Citations are to the Joint Pretrial Statement filed on March 16, 2005 [Docket No. 30] ("JPS"); PBGC's Motion for Summary Judgment and attachments filed on June 6, 2005 [Docket No. 54], including the Statement of Undisputed Material Facts in Support of PBGC's Motion for Summary Judgment ("PBGC's Statement of Undisputed Material Facts"), the Affidavit Declaration of Andrea Wong in Support of Motion for Summary Judgment and attached exhibits ("Wong Decl."); United's Response to the PBGC's Statement of Undisputed Material Facts in Support of PBGC's Motion for Summary Judgment and Statement of Additional Facts filed on July 15, 2005 [Docket No. 74] ("United's Response to PBGC's Undisputed Facts"); Response of ALPA to PBGC's Statement of Undisputed Material Facts filed on July 22, 2005 [Docket No. 91] ("ALPA's Response to PBGC's Undisputed Facts"); United Retired Pilots Benefit Protection Association and Certain Individual Retired Pilots' Response to Statement of Undisputed Material Facts in Support of PBGC's Motion for Summary Judgment filed on July 15, 2005 [Docket No. 83] ("Retired Pilots' Response to PBGC's Undisputed Facts"); PBGC's eight volume administrative record filed on March 28, 2005—volumes 1-3 [Docket No. 47] ("AR") and volumes 4-8 filed under seal [Docket No. 34] ("AR-S"); and the transcript of proceedings on April 13, 2005 ("Tr. of P 04/13/05").

3

Pilots Benefit Protection Association ("Retired Pilots") is an Illinois not-for-profit company created to protect the benefits of United's retired pilots. (*Id.* at 22.)

PBGC is a United States government corporation established under 29 U.S.C. § 1302(a) to administer the insurance program for defined benefit pension plans created under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301-1461 (2000 & Supp. II 2002). (JPS at 21.) PBGC guarantees certain benefits under defined benefit pension plans covered by ERISA and has authority to initiate termination of underfunded pension plans. (*Id.* at 23-27.) PBGC has established an administrative process to determine whether a pension plan should be terminated and to select a proposed termination date. (*See* Wong Decl., Ex. 1 (PBGC Directive issued on May 8, 2001).)

Under PBGC's administrative procedures, the Trusteeship Working Group ("TWG")— an interdisciplinary body comprised of representatives from PBGC's financial, actuarial, policy and legal offices—reviews a written recommendation by PBGC's Corporate Finance and Negotiations Department ("CFND") that one or more of the criteria for plan termination have been met and that the pension plan should be terminated. (Wong Decl., Ex. 1 at § 3.) Depending on criteria relating to the number of participants, the amount of underfunding and the basis for requiring plan termination, either the TWG chairperson or full TWG reviews the relevant information and makes a recommendation to the "approving official." (*Id.*) The identity of the approving official depends primarily on the size of the case. (*Id.* at § 2b.) In cases involving claims of $100 million or more, the approving official is the Executive Director of PBGC. (*Id.* at § 2b(4).) The Executive Director ultimately approves or rejects TWG's recommendations and supporting documents in order to determine whether the plan should be terminated and PBGC appointed trustee. (*Id.* at § 3.) The Executive Director also determines the plan termination date that should be proposed to the plan administrator. (*Id.*)

4

The Executive Director's decision is documented in a "Notice of Determination" and a

"Termination and Trusteeship Decision Record." (Wong Decl., Ex. 1 at §§ 2b, f, h, 3d(5).)

On December 17, 2004, United filed a motion seeking approval of a tentative

agreement with ALPA providing for substantial modifications to their collective bargaining

agreement. In the agreement, ALPA promised not to oppose termination of the Pilot Plan,

while United promised not to seek plan termination and to oppose an attempt by PBGC to

terminate the Pilot Plan before May 2005. (Id.)[2]

On December 23, 2004, the CFND forwarded a memorandum to the chairman of

TWG, recommending termination of the Pilot Plan with a termination date as soon as

practicable upon issuance of a "Notice of Determination," but in no event later than

December 30, 2004. (PBGC's Statement of Undisputed Material Facts at ¶15; AR at 14-23.)

On December 27, 2004, the TWG met and voted to concur with CFND's recommendations.

(Id. at ¶16; AR at 11-13.) On December 27, 2004, TWG's recommendation, with supporting

materials, was transmitted to PBGC's Executive Director. (Id. at ¶17; AR at 7.) On

December 29, 2004, PBGC's Executive Director issued the Notice of Determination, which

provided as follows:

> [T]he Pension Benefit Guaranty Corporation ("PBGC") has determined, under
> section 4042(a)(4) of the Employee Retirement Income Security Act of 1974, *as
> amended* ("ERISA"), 29 U.S.C. § 1342(a)(4), that the United Airlines Pilot
> Defined Benefit Pension Plan ("Plan") must be terminated because the possible
> long-run loss of the corporation with respect to the Plan may reasonably be
> expected to increase unreasonably if the Plan is not terminated. PBGC further

---

[2] See United's Motion to Approve Letter of Agreement Modifying Their Collective Bargaining
Agreement with ALPA filed on December 17, 2004 [Docket No. 9365]. United's motion to approve
the December Letter of Agreement was denied, but a revised agreement was approved on January 31,
2005. See Order Denying Motion to Approve entered on January 7, 2005 [Docket No. 9697]; United's
Motion to Approve Agreements Modifying Collective Bargaining Agreements filed on January 19, 2005
[Docket No. 9772]; Order Granting Motion to Approve entered on January 31, 2005 [Docket No.
9933]. The revised agreement continued to provide for ALPA's waiver of opposition to termination
after May 11, 2005. In the revised agreement, United promised not to seek plan termination and to
oppose PBGC-initiated termination at any time prior to the earlier of ten days before exiting
bankruptcy or when United's other defined benefit pension plans were terminated.

> determined, under ERISA § 4042(c), 29 U.S.C. § 1342(c), that the Plan must
> be terminated in order to avoid any unreasonable increase in the liability of the
> fund. Accordingly, PBGC intends to proceed under ERISA § 4042, 29 U.S.C. §
> 1342, to have the Plan terminated and PBGC appointed as statutory trustee,
> and under ERISA § 4048, 29 U.S.C. § 1348, to have December 30, 2004,
> established as the Plan's termination date.

(*Id.* at ¶33; AR at 1.)[3]

On December 29, 2004, PBGC sent to United and ALPA via overnight mail a copy of

the Notice of Determination, which ALPA received on December 30, 2004. (PBGC's

Statement of Undisputed Material Facts at ¶34-37; Wong Decl., Ex. 2.)[4] On December 30,

2004, the Notice of Determination was published nationally in *USA Today* and variety of

major newspapers serving metropolitan areas where United's hubs are located, including *The

Chicago Tribune*, *The Washington Post*, *The Los Angeles Times*, *The San Francisco Chronicle*,

*The Denver Post*, and *The Rocky Mountain News*. (PBGC's Statement of Undisputed

Material Facts at ¶38; Wong Decl., Ex. 3.)  In addition, on December 30, 2004, PBGC,

United and ALPA, published press releases on their websites announcing PBGC's decision to

---

[3] PBGC determined that, if the Pilot Plan continued until June 2005, it would have to absorb as much
as $138 million of additional liability. (PBGC's Statement of Undisputed Material Facts at ¶20.)
United, ALPA and the Retired Pilots dispute PBGC's determination regarding its possible long-run
loss in relation to the Pilot Plan. (United's Response to PBGC's Undisputed Facts at ¶20; ALPA's
Response to PBGC's Undisputed Facts at ¶20; Retired Pilots' Response to PBGC's Undisputed Facts
at ¶20.)

[4] United objects to the facts asserted by PBGC on the ground that PBGC refers to materials outside
the administrative record, while reserving its right to contest the statement of facts in the event that the
court requires PBGC to prove that the Pilot Plan must be terminated to avoid an unreasonable
increase in the liability of the fund. (United's Response to PBGC's Undisputed Facts at ¶¶34-37.)
Because the court will require PBGC to prove its case, it may rely on materials outside the
administrative record. As described below, United's reservation of rights does not preclude a finding
of adequate notice by PBGC extinguishing the reliance interests of Pilot Plan participants, particularly
because ALPA and the Retired Pilots admit the facts asserted by PBGC relating to notice. ALPA
admits the facts contained ¶¶34-37 and only objects on the ground that the facts asserted exceed the
"limited scope of the summary judgment motion this Court permitted PBGC to file before the close of
discovery." (ALPA's Response to PBGC's Undisputed Facts at ¶¶34-37.) The Retired Pilots raised a
similar objection in its brief and both objections are addressed in the Conclusions of Law. *See infra*, n.
6. The Retired Pilots admits the facts asserted in paragraphs 34 through 37. (Retired Pilots' Response
to PBGC's Undisputed Facts at ¶¶34-37.)

seek termination of the Pilot Plan. (PBGC's Statement of Undisputed Material Facts at ¶38; Wong Decl., Exs. 4, 5, 6.)[5]

On December 30, 2004, PBGC filed its complaint in the United States District Court for the Northern District of Illinois seeking termination of the Pilot Plan. (*See* Complaint (Case No. 04-cv-0838 [Docket No. 1]) at ¶1.)  The District Court granted motions by ALPA and the Retired Pilots to intervene under Fed. R. Civ. P. 24 and United's emergency motion to confirm automatic referral to the bankruptcy court pursuant to Internal Operating Procedure 15(a). (Case No. 04-cv-08338 [Docket Nos. 9, 12, 22, 23].)  The case was transferred to this Court on February 1, 2005, creating the pending adversary. (*Id.* [Docket No. 27].)  On March 28, 2005, PBGC filed the administrative record supporting its decision to seek involuntary termination of the Pilot Plan. (AR; AR-S.)

On May 11, 2005, United and PBGC obtained approval of a settlement providing for agreed termination of the Pilot Plan "with a termination date that is either mutually agreed by [United and PBGC] or judicially determined," provided that nothing in the settlement would limit PBGC's rights to seek its proposed plan termination date of December 30, 2004, and that the settlement would not require United to act in a manner inconsistent with the revised agreement, under which it was required to oppose a termination date before that of United's other defined benefit pension plans. (Order Granting United's Motion to Approve Agreement with PBGC entered on May 11, 2005 [Docket No. 11229], Ex. A, ¶4.)  The agreement also provided for PBGC to be appointed statutory trustee of the Pilot Plan. (*Id.* at ¶4b.)

---

[5] ALPA indicates that it "lacks knowledge sufficient to either admit or deny the allegations of paragraph 38." (ALPA's Response to PBGC's Undisputed Facts at ¶38.)  Because ALPA's response does not controvert the facts set forth in paragraph 38, the facts are deemed admitted pursuant to Local Rule 7056-2B.  The Retired Pilots denies paragraph 38 as not being supported by reference to the record because Exhibit 4 to the Wong declaration does not contain the mentioned publications and Exhibit 5 does not contain a PBGC press release. (Retired Pilots' Response to PBGC's Undisputed Facts at ¶38.)  However, Exhibits 3 and 4 to the Wong declaration do contain the newspaper publications and PBGC's press release, and the apparent error in PBGC's Statement of Undisputed Material Facts does not undermine the facts asserted.

## Conclusions of Law

### A. *Legal Standards*

The standard for ruling on summary judgment motions is whether the party seeking

judgment has demonstrated through admissible evidence that no genuine issue of material fact

exists for trial and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c), incorporated by reference in Fed. R. Bankr. Proc. 7056(c).[6] The initial issue raised by

this motion is whether, under 29 U.S.C. § 1342(c), the court reviews PBGC's determination

under an abuse of discretion standard or whether PBGC must prove in court grounds for

termination. If PBGC must prove its case, summary judgment on the issue of plan

termination would have to be denied because the grounds for termination are in dispute.

The issue is one of statutory interpretation, which is a matter of law and is appropriate

for summary judgment. *See APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624,

628 (7th Cir. 2002); *Abbott v. U.S.*, 41 Fed. Cl. 553, 571 (Fed. Cl. 1998) ("statutory

interpretation is a question of law amenable to disposition by summary judgment"); *Purdy v.

Town of Greenburgh*, 248 F.Supp.2d 266, 268 (S.D.N.Y. 2003) ("Legislative history and

statutory interpretation are questions of law appropriately decided on a motion for summary

judgment.")

As explained below, § 1342(c) requires the court to determine *de novo* whether the

Pilot Plan must be terminated rather than simply review PBGC's determination. On the other

hand, there is no factual dispute regarding notice to plan participants, and PBGC is entitled to

---

[6] The Retired Pilots argues that insofar as PBGC's motion seeks to establish a termination date it
requests relief beyond the scope of the motion that the court directed PBGC to submit. ALPA poses a
similar objection. (*See* ALPA's Response to PBGC's Undisputed Facts at 2.) Under Fed. R. Civ. P. 56,
"[a] party seeking to recover upon a claim, counterclaim or cross-claim or to obtain a declaratory
judgment may, at any time after the expiration of 20 days from the commencement of the action or
after service of a motion for summary judgment by the adverse party, move with or without supporting
affidavits for a summary judgment in the party's favor *upon all or any part thereof.*" *Id.* (emphasis
supplied). PBGC's motion for summary judgment is appropriate because it seeks relief contained in its
Complaint. (*See* Complaint at ¶1.)

partial summary judgment establishing a December 30, 2004 termination date should it

establish grounds for termination.

### B. The Standard of Review under 29 U.S.C. § 1342(c)

Title IV of ERISA is the exclusive means of terminating a defined benefit pension plan.

29 U.S.C. § 1341(a)(1). Termination of a plan can be initiated by the plan administrator or by

PBGC. 29 U.S.C. §§ 1341, 1342. Section 1342(a) gives PBGC the authority to determine

whether there are grounds for instituting proceedings to terminate a plan. 29 U.S.C.

§ 1342(a)(1)-(4). One of the criteria set forth in § 1342(a)—the one asserted by PBGC in this

proceeding—is that "the possible long-run loss of [PBGC] with respect to the plan may

reasonably be expected to increase unreasonably if the plan is not terminated." 29 U.S.C.

§ 1342(a)(4).

Under § 1342(c), if PBGC and the plan administrator agree that a plan should be

terminated and a trustee appointed, then termination may occur without court adjudication.[7]

---

[7] Section 1342(c) provides in pertinent part as follows:

> If the corporation [PBGC] is required under subsection (a) of this section to
> commence proceedings under this section with respect to a plan or, after issuing a
> notice under this section to a plan administrator, has determined that the plan should
> be terminated, it may, upon notice to the plan administrator, apply to the appropriate
> United States district court for a decree adjudicating that the plan must be terminated
> in order to protect the interests of the participants or to avoid any unreasonable
> deterioration of the financial condition of the plan or any unreasonable increase in the
> liability of the fund ... Upon granting a decree for which the corporation or trustee has
> applied under this subsection the court shall authorize the trustee appointed under
> subsection (b) of this section (or appoint a trustee if one has not been appointed under
> such subsection and authorize him) to terminate the plan in accordance with the
> provisions of this subtitle. If the corporation and the plan administrator agree that a
> plan should be terminated and agree to the appointment of a trustee without
> proceeding in accordance with the requirements of this subsection (other than this
> sentence) the trustee shall have the power described in subsection (d)(1) of this section
> and, in addition to any other duties imposed on the trustee under law or by agreement
> between the corporation and the plan administrator, the trustee is subject to the duties
> described in subsection (d)(3) of this section...

29 U.S.C. § 1342(c); see Jones & Laughlin Hourly Pension Plan v. LTV Corp., 824 F.2d 197, 199 (2d
Cir. 1987) ("On its face [the fourth sentence of subsection 1342(c)] permits PBGC and the
administrator ... to proceed in a summary fashion without affording plan members pretermination
notice and hearings to contest the propriety of the termination decision.") Section 1342(b)(3)

When there is such an agreement, termination occurs by way of PBGC's informal

adjudication, which is agency action subject to judicial review under the arbitrary and

capricious standard of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.[8]

However, when the plan administrator does not to agree to termination of the plan without

court adjudication, PBGC must, as it did in this case, "apply to the appropriate United States

district court for a decree adjudicating that the plan must be terminated … in order to avoid

any unreasonable increase in the liability of the fund." 29 U.S.C. § 1342(c). The court must

then determine, in the first instance, whether PBGC has met the statutory standard for

termination of a plan.

The language of § 1342(c) establishes that a court adjudication is required for plan

termination contested by the plan administrator. Section 1342(a) confirms this, providing that

with respect to "small plans" PBGC may prescribe a simplified procedure for termination "as

long as that procedure includes substantial safeguards for the rights of the participants and

beneficiaries under the plans, and for the employers who maintain such plans (*including the

requirement for a court decree under subsection (c) of this section*)." 29 U.S.C. § 1342(a)

(emphasis added). The legislative history of ERISA makes clear that a judicial determination

in the first instances was an intentional feature of the law. Under the original version of the

---

authorizes PBGC and the plan administrator to agree upon appointment of PBGC as trustee without
instituting a court proceeding. 29 U.S.C. § 1342(b)(3) ("[PBGC] and plan administrator may agree to
the appointment of a trustee without proceeding in accordance with the requirements of paragraphs
(1) and (2)."). Otherwise, PBGC may apply to the court for the appointment of a trustee pending a
decree terminating the plan pursuant to § 1342(c). 29 U.S.C. § 1342(b)(1).

[8] Informal adjudication is a residual category including all agency actions that are not rulemaking and
that need not be conducted through "on the record" hearings. *See City of West Chicago v. NRC*, 701
F.2d 632, 644 (7th Cir. 1983). When termination occurs through informal adjudication, the court
reviews PBGC's decision under the APA's arbitrary and capricious standard. *See Pension Benefit Guar.
Corp. v. LTV*, 496 U.S. 633, 110 S.Ct. 2668 (1990). In *LTV*, the court reviewed PBGC's informal
adjudication to restore a terminated pension plan pursuant to 29 U.S.C. § 1347 under the APA's
arbitrary and capricious standard. *Id.* at 657. Section 706 of the APA instructs the court to set aside
"agency action" in all cases if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in
accordance with the law" or if the action fails to meet statutory, procedural or constitutional
requirements. 5 U.S.C. § 706.

House bill, the Secretary of Labor was authorized to terminate a plan, after a hearing, if he determined that failure to terminate would cause long-run loss to PBGC, or if the employer requested termination. See H.R. Conf. Rep. No. 93-1280 (1974), reprinted in U.S.C.C.A.N. 5038, 5151. The bill was ultimately referred to the conference committee, which substituted the requirement of an administrative hearing with the current requirement for a court adjudication. *Id.* at 5152. Thus judicial determination, not review of informal agency adjudication, is required.

The Third Circuit, in *PBGC v. Heppenstall, Co.*, 633 F.2d 293 (3d Cir. 1980), reached just this conclusion. In that case, PBGC argued that the court should defer to its administrative expertise as to when a plan should terminate. The court rejected that deferential approach on the ground that "the statutory scheme relegates resolution of disputes over termination to the courts in the first instance, not to PBGC." *Id.* at 301. Concerned about PBGC's obvious interest to protect the solvency of the pension insurance program, the *Heppenstall* court reasoned that "Congress determined that in the absence of agreement between PBGC and a plan administrator the court would protect participants from overly cautious use of the involuntary termination feature of the insurance scheme." *Id.*

To support its position, PBGC relies on three unpersuasive decisions.

The first, *In re Pan American World Airways, Inc. Coop Ret. Inc. Plan*, 777 F.Supp. 1179, 1181 (S.D.N.Y. 1991), held that a *de novo* judicial determination was unwarranted because "[t]here is nothing in the applicable ERISA provisions to show that the [judicial review provisions] of the Administrative Procedures Act ... should not apply to this decision by PBGC." 777 F.Supp. at 1181. The *Pan Am* court reasoned that "[t]o find a contrary intent in the statute would be to depart from the usually applicable deference to the expertise of an administrative agency, particularly when the agency has made an adjudicative decision within

11

its sphere of responsibility." *Id.* at 1181-82.[9] Although the judicial review provisions of the APA are expressly incorporated into ERISA, *see* 29 U.S.C. § 1137(a), § 1342(c) does in fact make these provisions inapplicable. PBGC is required to obtain a judicial decree; it cannot adjudicate informally.

In *PBGC v. FEL Corp.*, 798 F.Supp. 239, 241 (D. N.J. 1992), the court applied the APA's arbitrary and capricious standard rather than holding a *de novo* hearing, based principally on the Supreme Court's decision in *Pension Benefit Guar. Corp. v. LTV*, 496 U.S. 633, 110 S.Ct. 2668 (1990). But reliance on *LTV* is misplaced because *LTV* involved PBGC's decision to restore a terminated pension plan under 29 U.S.C. § 1347, a statute significantly different from § 1342.[10] In contrast to § 1342, § 1347 does not require PBGC to apply to the court for a decree adjudicating that a plan must be restored when the plan administrator does not agree with PBGC's decision regarding restoration. Although enforcement of PBGC's decision to restore a pension plan pursuant to § 1347 may require the assistance of a court, the restoration is accomplished, with or without the agreement of the plan administrator, solely on account of PBGC's informal adjudication. *See supra*, n. 10. Thus, *LTV* mandates the

---

[9] Under the APA, "[t]he reviewing court is not empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 1607 (1985).

[10] Section 1347 provides as follows:

Whenever the corporation determines that a plan which is to be terminated under section 1341 or 1342 of this title, or which is in the process of being terminated under section 1341 or 1342 of this title, should not be terminated under section 1341 or 1342 of this title as a result of such circumstances as the corporation determines to be relevant, the corporation is authorized to cease any activities undertaken to terminate the plan, and to take whatever action is necessary and within its power to restore the plan to its status prior to the determination that the plan was to be terminated under section 1341 or 1342 of this title. In the case of a plan which has been terminated under section 1341 or 1342 of this title the corporation is authorized in any such case in which the corporation determines such action to be appropriate and consistent with its duties under this subchapter, to take such action as may be necessary to restore the plan to its pretermination status, including, but not limited to, the transfer to the employer or a plan administrator of control of part or all of the remaining assets and liabilities of the plan.

29 U.S.C. § 1347.

application of the APA's arbitrary and capricious standard to PBGC decision-making under §
1347, but not with respect to court adjudications related to termination under § 1342.

The third decision, *PBGC v. Haberbush*, 2000 WL 33362003 (C.D. Cal. Nov. 3, 2000),
held that the APA's arbitrary and capricious standard was applicable simply because PBGC's
determination pursuant to § 1342 to terminate the pension plan was "final agency action." *Id.*
at *5 ("[t]hat determination was the agency's final disposition for purposes of the APA, which
qualifies as a form of adjudication under the APA.") The *Haberbush* court also relied on *LTV*,
reasoning that "the Supreme Court has held that the APA's arbitrary and capricious standard
of review applies to a determination of the PBGC governed by the same set of statutory
provisions at issue in this case." *Id.* at *6. PBGC's decision under § 1342 may be final agency
action, but it only constitutes informal APA adjudication when the plan administrator waives
§ 1342's requirement for a court decree. Like the *FEL Corp.* decision, *Haberbush* disregards
the significant differences between §§ 1342 and 1347.

Congress delegated the ultimate authority to the court, not PBGC, to issue a decree
"adjudicating" the question of plan termination under § 1342(c).[11]  Because United has not
waived § 1342(c)'s requirement for a decree adjudicating that the Pilot Plan must be
terminated, ERISA requires the court to determine whether PBGC has met the requirements
for plan termination.

C.        *Termination of the Pilot Plan.*

Because there are factual disputes over whether termination of the Pilot Plan is
required, a trial on that question is necessary. *See supra*, n. 4. As any plaintiff in typical civil
litigation, PBGC will have the burden of proof at trial under a preponderance of the evidence
standard. "Where Congress has not prescribed the appropriate standard of proof and the
Constitution does not dictate a particular standard, we must prescribe one." *Herman &*

---

[11] *See* BLACK'S LAW DICTIONARY (8th ed. West 2004) ("adjudicate" means "to rule upon judicially").

*MacLean v. Huddleston*, 459 U.S. 375, 389, 103 S.Ct. 683, 691 (1983). In the absence of a statutory standard, the preponderance of the evidence standard is presumed to apply in civil actions unless particularly important individual interests or rights are at stake. *See Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659 (1991).[12]

D. *PBGC's proposed December 30, 2004 termination date*

If PBGC proves that the Pilot Plan must be terminated, it will be necessary to consider whether the notice it provided was sufficient to establish a December 30, 2004 termination date. Where, as here, PBGC and the plan administrator do not agree upon a termination date, the court must set one. 29 U.S.C. § 1348(a)(3)-(4). Courts use a two-step process for establishing a termination date, taking into account (1) "the expectations of the plan participants" and (2) "the financial implications of the termination for PBGC." *See Pension Benefit Guar. Corp. v. Republic Techs. Int'l., LLC*, 386 F.3d 659, 665 (6th Cir. 2004) (collecting authorities). In that process, the courts first determine the earliest date by which the plan participants had actual or constructive notice of termination, thereby extinguishing their reliance interests. *See Republic Techs. Int'l.*, 386 F.3d at 666; *Pension Benefit Guar. Corp. v. Broadway Maint. Corp. (In re Pension Plan for Employees of Broadway Maint. Corp.)*, 707 F.2d 647, 652-53 (2d Cir. 1983); *see also Eckstein v. Balcor Film Investors*, 58 F.3d 1162, 1168 (7th Cir. 1995) (defining constructive notice as "not actual knowledge, but the ability to acquire knowledge by reasonably diligent inquiry"). The courts then select whichever later date serves the interests of PBGC. *See Republic Techs. Int'l.*, 386 F.3d at 667-68.

---

[12] The APA, as it applies to formal administrative hearings, places the burden of proof on the proponent of a rule or order. 5 U.S.C. § 556(d) ("[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof.") Thus, if PBGC was required to provide a formal hearing process, it would have had the burden of proof with respect to plan termination. The fact that Congress intended court adjudication under § 1342(c) as an alternative to formal adjudication further supports placing the burden of proof on PBGC as the proponent of the order adjudicating that the Pilot Plan must be terminated.

14

The question of establishing PBGC's proposed December 30, 2004 termination date is appropriate for summary judgment because there are no genuine issues of fact for trial. The undisputed facts demonstrate that the participants of the Pilot Plan received notice that was sufficient to extinguish any justifiable expectation that the plan would continue. The Notice of Determination was sent by PBGC on December 29, 2004, and received by ALPA the next day, December 30, 2004. Also, on December 30, 2004, the Notice of Determination was published in newspapers throughout the country. In addition, PBGC, United and ALPA, published press releases announcing PBGC's decision to seek termination of the Pilot Plan.

United argues that the reasonable expectations of the plan participants weighed so heavily against PBGC's proposed December 30, 2004 termination date that their expectations should override the impact of notice. However, that is not the applicable standard. *See Republic Techs. Int'l., LLC*, 386 F.3d at 666 (rejecting the district court's conclusion that in light of "strong interests and the nature of shutdown benefits ... PBGC's notice to the participants did not presumptively terminate the participants' reliance interests in shutdown benefits"). The Pilot Plan participants' expectation interests were extinguished on December 30, 2004, when they received reasonable notice from PBGC that it was seeking termination of the Pilot Plan. Moreover, PBGC was not required, as ALPA suggests, to provide individualized notice to each of the approximately 15,000 participants of the Pilot Plan.

To answer the second question—what date serves the interests of PBGC—the court need look no farther than PBGC's proposed date. *See Pension Benefit Guar. Corp. v. Mize Co., Inc.*, 987 F.2d 1059, 1063 (4th Cir.1993) ("PBGC's interests should be deemed to be best served by the date proposed by PBGC.") There is no question that PBGC is better served by the December 30 date than some later date, and so the requirements for effective notice have been met.

15

### Conclusion

For the reasons stated above, PBGC is entitled to partial summary on the question of the effectiveness of notice in establishing a December 30, 2004 termination date, but not as to the question of whether plan termination is appropriate. This question will be adjudicated at trial. A separate order will be entered consistent with this decision.

Dated: September 21, 2005

Eugene R. Wedoff
United States Bankruptcy Judge