UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>UAL Corporation, et al.,<br><br>    Debtors.<br><br>―――――――――――――――――<br><br>Pension Benefit Guaranty Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>United Air Lines, Inc., as Plan Administrator for the United Airlines Pilot Defined Benefit Pension Plan,<br><br>    Defendant,<br><br>and<br><br>Air Line Pilots Association, International, United Retired Pilots Benefit Protection Association, Roger D. Hall, Dennis D. Dillon, Gerard Terstiege, Eugene M. Cummings, Raymond P. Fink, James M. Krasno and William L. Rutherford,<br><br>    Intervenors. | Chapter 11<br><br>Case No. 02 B 48191<br><br><br><br>Adversary No. 05 A 00481 |

### AMENDED MEMORANDUM OF DECISION
### ON MOTION FOR SUMMARY JUDGMENT

This adversary proceeding, arising in the administratively consolidated Chapter 11 cases of United Air Lines, Inc. ("United") and its related entities, is before the court for ruling on the motion of the Pension Benefit Guaranty Corporation ("PBGC") for summary judg-

ment. The motion seeks an order (1) terminating the United Airlines Pilot Defined Benefit Pension Plan (the "Pilot Plan") and appointing PBGC as trustee of its assets; (2) establishing December 30, 2004, as the termination date of the Pilot Plan under 29 U.S.C. § 1348(a)(4); and (3) requiring United and all other persons who have possession, custody or control of all records, assets and property of the Pilot Plan to deliver them to PBGC. The third request is not in dispute: the parties acknowledge that if the Pilot Plan is terminated, the records, assets and property of the Pilot Plan must be turned over to PBGC as trustee. There is a dispute, however, regarding plan termination and the termination date.

As discussed below, PBGC is not entitled to summary judgment because there is a dispute with respect to plan termination. In the absence of an agreement with the plan administrator, PBGC must prove at trial, by a preponderance of the evidence, that the Pilot Plan must be terminated "in order to protect the interests of the participants or to avoid any unreasonable deterioration of the financial condition of the plan or to avoid any unreasonable increase in the liability of the fund." 11 U.S.C. § 1342(c). However, if PBGC satisfies this burden of proof and the Pilot Plan is terminated, the December 30 termination date suggested by PBGC will be effective, because the undisputed facts demonstrate that participants of the Pilot Plan received adequate notice of termination on that date and that date serves the interests of PBGC.

## Jurisdiction

Federal district courts have exclusive jurisdiction over bankruptcy cases. 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), district courts may refer bankruptcy cases to the bankruptcy judges for their district, and by Internal Operating Procedure 15(a) the District Court for the Northern District of Illinois has made such a reference of the pending cases. When presiding over a referred case, the bankruptcy court has jurisdiction under 28 U.S.C.

§ 157(b)(1) to enter appropriate orders and judgments in core proceedings within the case. PBGC's adversary is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning estate administration). This court may therefore enter a final judgment. *In re Smith*, 848 F.2d 813, 816 (7th Cir. 1988).

## Factual Background

The background facts relevant to the pending motion are not in dispute.[1]

On December 9, 2002, United and twenty-seven related corporations filed the voluntary Chapter 11 cases now before the court. (JPS at 22.) United is the plan administrator and contributing sponsor of the Pilot Plan under ERISA. (*Id.* at 21.) Approximately 15,000 active, retired and terminated United employees are participants in the Pilot Plan. (*Id.* at 22.) Before the end of 2004, United stated repeatedly, in court filings and in communications to the press and its employees, that it would likely need to terminate and replace all of its defined benefit pension plans in order to emerge successfully from bankruptcy. (*See id.* at 22.)

The Air Line Pilots Association, International ("ALPA") is the exclusive collective bargaining representative of United's pilots. ALPA entered into collective bargaining

---

[1] Citations are to the Joint Pretrial Statement filed on March 16, 2005 [Docket No. 30] ("JPS"); PBGC's Motion for Summary Judgment and attachments filed on June 6, 2005 [Docket No. 54], including the Statement of Undisputed Material Facts in Support of PBGC's Motion for Summary Judgment ("PBGC's Statement of Undisputed Material Facts") and the the Declaration of Andrea Wong and attached exhibits ("Wong Decl."); United's Response to PBGC's Statement of Undisputed Material Facts in Support of PBGC's Motion for Summary Judgment and Statement of Additional Facts filed on July 15, 2005 [Docket No. 74] ("United's Response to PBGC's Undisputed Facts"); Response of ALPA to PBGC's Statement of Undisputed Material Facts filed on July 22, 2005 [Docket No. 91] ("ALPA's Response to PBGC's Undisputed Facts"); United Retired Pilots Benefit Protection Association and Certain Individual Retired Pilots' Response to Statement of Undisputed Material Facts in Support of PBGC's Motion for Summary Judgment filed on July 15, 2005 [Docket No. 83] ("Retired Pilots' Response to PBGC's Undisputed Facts"); and PBGC's eight volume administrative record filed on March 28, 2005—volumes 1-3 [Docket No. 47] ("AR") and volumes 4-8 filed under seal [Docket No. 34] ("AR-S").

agreements with United that establish the terms and conditions of employment for United's pilots, including pension benefits provided under the Pilot Plan. (JPS at 21-22.) The United Retired Pilots Benefit Protection Association ("Retired Pilots") is an Illinois not-for-profit corporation created to protect the benefits of United's retired pilots. (*Id.* at 22.)

PBGC is a United States government corporation established under 29 U.S.C. § 1302(a) to administer the insurance program for defined benefit pension plans created under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301-1461. (JPS at 21.) PBGC guarantees certain benefits under pension plans covered by ERISA and has authority, under circumstances defined by ERISA, to terminate underfunded pension plans. (*Id.* at 23-24; *see* 29 U.S.C. § 1342.) PBGC has established an administrative process, involving its Trustee Working Group ("TWG"), to determine whether and when a pension plan should be terminated. (*See* Wong Decl., Ex. 1 (PBGC Directive issued on May 8, 2001).)[2]

On December 17, 2004, United filed a motion seeking approval of a tentative agreement with ALPA providing for substantial modifications to their collective bargaining agreement. In the agreement, ALPA promised not to oppose termination of the Pilot Plan by United, and United promised not to seek plan termination, and to oppose any attempt by PBGC to terminate the plan, before May 2005.[3]

---

[2] TWG is an interdisciplinary body, comprised of representatives from PBGC's financial, actuarial, policy and legal offices, that makes recommendations for plan termination based on staff reports. (Wong Decl., Ex. 1 at § 3.) In cases involving claims of $100 million or more, the Executive Director of PBGC determines whether to proceed with a termination recommended by TWG. (*Id.* at § 2b(4), 3.) The Executive Director also determines the termination date that should be proposed to the plan administrator. (*Id.*)

[3] See United's Motion to Approve Letter of Agreement Modifying Their Collective Bargaining Agreement with ALPA filed on December 17, 2004 [Docket No. 9365]. United's motion to approve the December Letter of Agreement was denied, but a revised agreement was approved on January 31, 2005. See Order Denying Motion to Approve entered on January 7,

On December 23, 2004, PBGC staff forwarded a memorandum to the chairman of the TWG recommending termination of the Pilot Plan with a termination date as soon as practicable but in no event later than December 30, 2004. (PBGC's Statement of Undisputed Material Facts at ¶15; AR at 14-23.) On December 27, 2004, the TWG met and voted to concur with this recommendation. (*Id.* at ¶16; AR at 11-13.) On December 27, 2004, TWG's recommendation, with supporting materials, was transmitted to PBGC's Executive Director. (*Id.* at ¶17; AR at 7.) On December 29, 2004, the Executive Director issued a Notice of Determination, which provided as follows:

> [T]he Pension Benefit Guaranty Corporation ("PBGC") has determined, under section 4042(a)(4) of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. § 1342(a)(4), that the United Airlines Pilot Defined Benefit Pension Plan ("Plan") must be terminated because the possible long-run loss of the corporation with respect to the Plan may reasonably be expected to increase unreasonably if the Plan is not terminated. PBGC further determined, under ERISA § 4042(c), 29 U.S.C. § 1342(c), that the Plan must be terminated in order to avoid any unreasonable increase in the liability of the fund. Accordingly, PBGC intends to proceed under ERISA § 4042, 29 U.S.C. § 1342, to have the Plan terminated and PBGC appointed as statutory trustee, and under ERISA § 4048, 29 U.S.C. § 1348, to have December 30, 2004, established as the Plan's termination date.

(*Id.* at ¶33; AR at 1.)[4]

---

2005 [Docket No. 9697]; United's Motion to Approve Agreements Modifying Collective Bargaining Agreements filed on January 19, 2005 [Docket No. 9772]; Order Granting Motion to Approve entered on January 31, 2005 [Docket No. 9933]. The revised agreement continued to provide for ALPA's waiver of opposition to termination after May 11, 2005. In the revised agreement, United promised not to seek plan termination and to oppose PBGC-initiated termination at any time before the earlier of ten days before exiting bankruptcy or termination of United's other defined benefit pension plans.

[4] PBGC has determined that if the Pilot Plan continued until June 2005, it would have to absorb as much as $138 million of additional liability. (PBGC's Statement of Undisputed Material Facts at ¶20.) United, ALPA and the Retired Pilots dispute PBGC's determination regarding its possible long-run loss in relation to the Pilot Plan. (United's Response to PBGC's Undisputed Facts at ¶20; ALPA's Response to PBGC's Undisputed Facts at ¶20; Retired Pilots' Response to PBGC's Undisputed Facts at ¶20.)

On December 29, 2004, PBGC sent to United and ALPA via overnight mail a copy of the Notice of Determination, which ALPA received on December 30, 2004. (PBGC's Statement of Undisputed Material Facts at ¶34-37; Wong Decl., Ex. 2.)[5] On December 30, 2004, the Notice of Determination was published nationally in *USA Today* and a variety of major newspapers serving metropolitan areas where United's hubs are located, including *The Chicago Tribune*, *The Washington Post*, *The Los Angeles Times*, *The San Francisco Chronicle*, *The Denver Post*, and *The Rocky Mountain News*. (PBGC's Statement of Undisputed Material Facts at ¶38; Wong Decl., Ex. 3.) In addition, on December 30, 2004, PBGC, United and ALPA all published press releases on their websites announcing PBGC's decision to seek termination of the Pilot Plan. (PBGC's Statement of Undisputed Material Facts at ¶38; Wong Decl., Exs. 4, 5, 6.)[6]

On December 30, 2004, PBGC filed a complaint in the United States District Court for the Northern District of Illinois seeking termination of the Pilot Plan. (*See* Complaint

---

[5] United has objected to the facts asserted by PBGC regarding notice, but only on the ground that these facts are not included in the administrative record. (United's Response to PBGC's Undisputed Facts at ¶¶34-37.) Because, as discussed below, PBGC is required to prove its case—and not merely to defend against claims that its decision-making was arbitrary—PBGC is not limited to facts set out in its administrative record. ALPA and the Retired Pilots admit these facts, but object on the ground that PBGC's arguments regarding notice exceed the "limited scope of the summary judgment motion this Court permitted PBGC to file before the close of discovery." (ALPA's Response to PBGC's Undisputed Facts at ¶¶34-37; Retired Pilots' Response to PBGC's Undisputed Facts at ¶¶34-37.) Both objections are addressed in the Conclusions of Law. *See infra*, n. 7.

[6] ALPA indicates that it "lacks knowledge sufficient to either admit or deny the allegations of paragraph 38." (ALPA's Response to PBGC's Undisputed Facts at ¶38.) Because ALPA's response does not controvert the facts set forth in paragraph 38, the facts are deemed admitted pursuant to Local Rule 7056-2B. The Retired Pilots deny paragraph 38 as not being supported by reference to the record because Exhibit 4 to the Wong declaration does not contain the mentioned publications and Exhibit 5 does not contain a PBGC press release. (Retired Pilots' Response to PBGC's Undisputed Facts at ¶38.) However, Exhibits 3 and 4 to the Wong declaration do contain the newspaper publications as well as PBGC's press release, and the apparent error in PBGC's Statement of Undisputed Material Facts does not undermine the facts asserted.

(Case No. 04-cv-0838 [Docket No. 1]) at ¶1.) The district court granted motions by ALPA and the Retired Pilots to intervene under Fed. R. Civ. P. 24 and also granted United's emergency motion to confirm automatic referral to the bankruptcy court pursuant to Internal Operating Procedure 15(a). (Case No. 04-cv-08338 [Docket Nos. 9, 12, 22, 23].) The case was transferred to this court on February 1, 2005, creating the pending adversary. (Id. [Docket No. 27].) On March 28, 2005, PBGC filed the administrative record supporting its decision to seek involuntary termination of the Pilot Plan. (AR; AR-S.)

On May 11, 2005, this court approved a settlement between United and PBGC that provided for an agreed termination of the Pilot Plan "with a termination date that is either mutually agreed by [United and PBGC] or judicially determined," but nothing in the settlement limited PBGC's right to seek its proposed plan termination date of December 30, 2004, nor did the settlement require United to act in a manner inconsistent with the revised agreement with ALPA, under which it was obligated to oppose a termination date before that of United's other defined benefit pension plans. (Order Granting United's Motion to Approve Agreement with PBGC entered on May 11, 2005 [Docket No. 11229], Ex. A, ¶4.)

## Conclusions of Law

*A. Summary Judgment Standards*

A motion for summary judgment may be granted if the movant demonstrates through admissible evidence that no genuine issue of material fact exists for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), incorporated by reference in Fed. R. Bankr. Proc. 7056(c).[7] The initial—and dispositive—issue raised by the present

---

[7] The Retired Pilots argue that insofar as PBGC's motion seeks to establish a termination date it requests relief beyond the scope of the motion that the court directed PBGC to submit. ALPA poses a similar objection. (*See* ALPA's Response to PBGC's Undisputed Facts at 2.) Under Fed. R. Civ. P. 56, "[a] party seeking to recover upon a claim, counterclaim or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from

summary judgment motion is whether under 29 U.S.C. § 1342(c) a court may issue a decree terminating a pension plan if parties opposing termination fail to establish that PBGC acted arbitrarily in seeking termination, or whether PBGC must affirmatively establish grounds for termination. If PBGC must prove its case, summary judgment could not be granted, because the grounds for plan termination here are in dispute.

As discussed below, summary judgement must be denied because § 1342(c) requires a judicial determination that the Pilot Plan must be terminated—a question on which PBGC bears the burden of proof—not simply judicial review of the reasonableness of PBGC's decision to seek termination. On the other hand, there is no factual dispute regarding notice to plan participants. PBGC gave effective notice of plan termination on December 30, 2004, and is entitled to an order making that finding. If, at trial, PBGC establishes grounds for termination as of December 30, 2004, the plan will be terminated as of that date.

B. *The Standard of Review under 29 U.S.C. § 1342(c)*

Title IV of ERISA provides the exclusive means for terminating a defined benefit pension plan regulated by the statute. 29 U.S.C. § 1341(a)(1). Section 1342(a) gives PBGC the authority to institute proceedings to terminate a plan if PBGC determines that any of four listed grounds exist. 29 U.S.C. § 1342(a)(1)-(4). One of the grounds in § 1342(a)—the one on which PBGC relies here—is that "the possible long-run loss of [PBGC] with respect to the plan may reasonably be expected to increase unreasonably if the plan is not terminated." 29 U.S.C. § 1342(a)(4).

---

the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor *upon all or any part thereof.*" *Id.* (emphasis supplied). PBGC's motion for summary judgment is appropriate because it seeks relief contained in its Complaint. (*See* Complaint at ¶1.)

8

Under § 1342(c), if PBGC and the plan administrator agree that a plan should be terminated and a trustee appointed, then termination may occur without court adjudication.[8] When there is such an agreement, termination occurs by way of PBGC's informal agency action, which, if challenged, is subject to judicial review under the arbitrary and capricious standard of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.[9]

---

[8] Section 1342(c) provides in pertinent part as follows:
> If the corporation [PBGC] is required under subsection (a) of this section to commence proceedings under this section with respect to a plan or, after issuing a notice under this section to a plan administrator, has determined that the plan should be terminated, it may, upon notice to the plan administrator, apply to the appropriate United States district court for a decree adjudicating that the plan must be terminated in order to protect the interests of the participants or to avoid any unreasonable deterioration of the financial condition of the plan or any unreasonable increase in the liability of the fund ... Upon granting a decree for which the corporation or trustee has applied under this subsection the court shall authorize the trustee appointed under subsection (b) of this section (or appoint a trustee if one has not been appointed under such subsection and authorize him) to terminate the plan in accordance with the provisions of this subtitle. If the corporation and the plan administrator agree that a plan should be terminated and agree to the appointment of a trustee without proceeding in accordance with the requirements of this subsection (other than this sentence) the trustee shall have the power described in subsection (d)(1) of this section and, in addition to any other duties imposed on the trustee under law or by agreement between the corporation and the plan administrator, the trustee is subject to the duties described in subsection (d)(3) of this section...

29 U.S.C. § 1342(c); see *Jones & Laughlin Hourly Pension Plan v. LTV Corp.*, 824 F.2d 197, 199 (2d Cir. 1987) ("On its face [the fourth sentence of subsection 1342(c)] permits PBGC and the administrator ... to proceed in a summary fashion without affording plan members pretermination notice and hearings to contest the propriety of the termination decision.") Additionally, § 1342(b)(3) authorizes PBGC and the plan administrator to agree upon appointment of PBGC as trustee without instituting a court proceeding. ("[PBGC] and plan administrator may agree to the appointment of a trustee without proceeding in accordance with the requirements of paragraphs (1) and (2).") Otherwise, PBGC may apply to the court for the appointment of a trustee pending a decree terminating the plan pursuant to § 1342(c). 29 U.S.C. § 1342(b)(1).

[9] "Informal" action is a residual category including all agency actions that are not rulemaking and that need not be conducted through "on the record" hearings. See *City of West Chicago v. NRC*, 701 F.2d 632, 644 (7th Cir. 1983). Section 706 of the APA instructs the court to set aside "agency action" in all cases if it is "arbitrary, capricious, an abuse of discretion, or other-

However, and of critical importance here, if the plan administrator does not to agree to termination of the plan, PBGC must, as it did in this case, "apply to the appropriate United States district court for a decree adjudicating that the plan must be terminated." 29 U.S.C. § 1342(c). In this context, § 1342(c) requires a *de novo* determination of the appropriateness of plan termination, not mere deferential review under the APA of PBGC's determination to proceed.

- First, § 1342(a) provides that with respect to "small plans" PBGC may prescribe a simplified procedure for termination "as long as that procedure includes substantial safeguards for the rights of the participants and beneficiaries under the plans, and for the employers who maintain such plans (including the requirement for a court decree under subsection (c) of this section)." 29 U.S.C. § 1342(a). Thus, the statute itself requires that the court decree serve as a "substantial safeguard" for the rights of parties other than PBGC affected by plan termination; deferential review of agency decision-making is inconsistent with this requirement.

- Second, the grounds for termination required to support a judicial decree under § 1342(c) are significantly different from those that PBGC must find to initiate termination proceedings under § 1342(a).[10] PBGC may decide to initiate termination proceedings under

---

wise not in accordance with the law" or if the action fails to meet statutory, procedural or constitutional requirements. 5 U.S.C. § 706. When termination occurs through informal action, the court accordingly reviews PBGC's decision under the arbitrary and capricious standard. *See PBGC. v. LTV*, 496 U.S. 633, 655 (1990) (reviewing PBGC's informal action restoring a terminated pension plan pursuant to 29 U.S.C. § 1347).

[10] Section 1342(a) provides in pertinent part that PBGC may institute proceedings to terminate a plan whenever it determines that:

> (1) the plan has not met the minimum funding standard required under section 412 of Title 26, or has been notified by the Secretary of the Treasury that a notice of deficiency under section 6212 of Title 26 has been mailed with respect to the tax imposed under section 4971(a) of Title 26,
>
> (2) the plan will be unable to pay benefits when due,
>
> (3) the reportable event described in section 1343(c)(7) of this title has occurred, or

§ 1342(a) without addressing the grounds needed for a judicial decree effecting a termination under § 1342(c). For example, under § 1342(a)(1), PBGC may initiate termination proceedings simply because a plan is underfunded, but if the underfunding is only temporary, it would not necessarily establish any of the grounds for termination under § 1342(c).[11] Thus, a judicial decree under § 1342(c) must be based on more than a determination that PBGC did not act arbitrarily in initiating the proceeding.

- Finally, § 1342(c) states that the court decree itself is to "adjudicate" whether termination is necessary under one of the specified grounds, not merely to review a determination previously made by PBGC. *See Black's Law Dictionary* (8th ed. West 2004) ("adjudicate" means "to rule upon judicially").

The legislative history of ERISA confirms that *de novo* judicial determination was an intentional feature of the law. Under the original version of the House bill, unless the plan administrator requested termination, the Secretary of Labor was authorized to terminate a plan only after an administrative hearing establishing grounds for termination. See H.R. Conf. Rep. No. 93-1280 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5151. The bill was ultimately referred to a conference committee that removed the requirement for an administrative hearing but introduced the current requirement for court adjudication. *Id.* at 5152. Thus, a

---

(4) the possible long-run loss of the corporation with respect to the plan may reasonably be expected to increase unreasonably if the plan is not terminated.

29 U.S.C. § 1342(a). Section 1342(c), by contrast, requires a judicial decree of termination to be based on a need " [1] to protect the interests of the participants, [2] to avoid any unreasonable deterioration of the financial condition of the plan or [3] to avoid any unreasonable increase in the liability of the fund."

[11] The statutory structure appears to address precisely this situation. If the plan administrator believes that an underfunded plan cannot survive, and so accepts a PBGC determination under § 1342(a) that the plan should be terminated, termination becomes effective without judicial involvement. But if the administrator believes that an underfunded plan is still viable and declines to accept PBGC's decision to terminate, the employer is entitled to a judicial proceeding at which PBGC must establish the necessity for termination under § 1342(c).

11

formal hearing on plan termination was always required if the administrator did not consent; the court was simply given the role of adjudicator originally assigned to the agency.

PBGC's argument for deferential judicial review here resembles the argument it made in *PBGC v. Heppenstall Co.*, 633 F.2d 293 (3d Cir. 1980). In *Heppenstall*, PBGC insisted that the court should defer to PBGC in determining a plan's termination date under § 1348.[12] The court rejected that deferential approach on the ground that "the statutory scheme relegates resolution of disputes over termination to the courts in the first instance, not to PBGC." *Id.* at 301. Concerned about PBGC's obvious interest in protecting the solvency of the pension insurance program, the court said: "Congress determined that in the absence of agreement between PBGC and a plan administrator the court would protect participants from overly cautious use of the involuntary termination feature of the insurance scheme." *Id.* The analysis in *Heppenstall* is fully applicable here.

PBGC's cites three decision to support deferential review of its termination decision, but none is persuasive.

The first, *In re Pan American World Airways, Inc. Cooperative Ret. Inc. Plan*, 777 F. Supp. 1179, 1181 (S.D.N.Y. 1991), held that *de novo* judicial determination was unwarranted because "[t]here is nothing in the applicable ERISA provisions to show that the [judicial review provisions] of the Administrative Procedures Act ... should not apply to this decision by PBGC." 777 F. Supp. at 1181. The court reasoned that "[t]o find a contrary intent in the statute would be to depart from the usually applicable deference to the expertise of an administrative agency, particularly when the agency has made an adjudicative decision within

---

[12] Section 1384 provides that in the absence of an agreement between the plan administrator and PBGC, the termination date of a plan is "the date established by the court." 29 U.S.C. § 1384(a)(4). At the time the *Heppenstall* opinion was issued, this language was found at § 1384(2).

12

its sphere of responsibility." *Id.* at 1181-82.[13] As discussed above, however, § 1342(c) removes contested plan termination from PBGC's sphere of responsibility. In the absence of consent from the plan administrator, PBGC is required to obtain a judicial decree; it cannot engage in informal agency action subject merely to deferential judicial review.

In *PBGC v. FEL Corp.*, 798 F. Supp. 239, 241 (D. N.J. 1992), the court applied the APA's arbitrary and capricious standard rather than holding a *de novo* hearing, based principally on the Supreme Court's decision in *LTV*, 496 U.S. 633. But *LTV* involved PBGC's decision to restore a terminated pension plan under 29 U.S.C. § 1347, a statute significantly different from § 1342.[14] Unlike § 1342, § 1347 does not require PBGC to apply to the court for a decree adjudicating that a plan must be restored when the plan administrator disagrees with PBGC's decision. Although enforcement of PBGC's decision to restore a pension plan pursuant to § 1347 may require the assistance of a court, the restoration is accomplished, with or without the agreement of the plan administrator, solely on account of PBGC's informal

---

[13] Under the APA, "[t]he reviewing court is not empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

[14] Section 1347 provides as follows:

> Whenever the corporation [PBGC] determines that a plan which is to be terminated under section 1341 or 1342 of this title, or which is in the process of being terminated under section 1341 or 1342 of this title, should not be terminated under section 1341 or 1342 of this title as a result of such circumstances as the corporation determines to be relevant, the corporation is authorized to cease any activities undertaken to terminate the plan, and to take whatever action is necessary and within its power to restore the plan to its status prior to the determination that the plan was to be terminated under section 1341 or 1342 of this title. In the case of a plan which has been terminated under section 1341 or 1342 of this title the corporation is authorized in any such case in which the corporation determines such action to be appropriate and consistent with its duties under this subchapter, to take such action as may be necessary to restore the plan to its pretermination status, including, but not limited to, the transfer to the employer or a plan administrator of control of part or all of the remaining assets and liabilities of the plan.

29 U.S.C. § 1347.

agency action. Thus, *LTV's* application of the arbitrary and capricious standard to PBGC decision-making under § 1347 has no bearing on court adjudications under § 1342.

The third decision, *PBGC v. Haberbush*, No. CV0002631GHKAIJX, 2000 WL 33362003 (C.D. Cal. Nov. 3, 2000), applied the APA's arbitrary and capricious standard because PBGC's determination to terminate a pension plan pursuant to § 1342 was "final agency action." *Id.* at *5. The *Haberbush* court also relied on *LTV*, reasoning that "the Supreme Court has held that the APA's arbitrary and capricious standard of review applies to a determination of the PBGC governed by the same set of statutory provisions at issue in this case." *Id.* at *6. However, PBGC's decision under § 1342(a) is only final agency action when the plan administrator waives § 1342's requirement for a court decree, and, as noted above, *LTV* is not relevant here.

Because the court must determine whether grounds for termination under § 1342(c) exist, and because there are factual disputes over whether termination of the Pilot Plan is appropriate under those standards, *see supra*, n. 4, a trial on that question is necessary. As any plaintiff in typical civil litigation, PBGC will have the burden of proof at trial under a preponderance of the evidence standard. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) (in the absence of a statutory standard, the preponderance of the evidence standard is presumed to apply in civil actions unless particularly important individual interests or rights are at stake).[15]

---

[15] The APA, as it applies to formal administrative hearings, places the burden of proof on the proponent of a rule or order. 5 U.S.C. § 556(d) ("[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof."). Thus, if PBGC had been required to provide a formal agency hearing, its staff would have had the burden of proof with respect to plan termination. The fact that Congress provided for court adjudication under § 1342(c) as an alternative to a formal agency hearing further supports placing the burden of proof on PBGC as the proponent of the order adjudicating that the Pilot Plan must be terminated.

### C. *PBGC's proposed December 30, 2004 termination date*

If PBGC proves that the Pilot Plan must be terminated, it will be necessary to consider whether the notice it provided was sufficient to establish a termination date of December 30, 2004. Where, as here, PBGC and the plan administrator do not agree upon a termination date, the court must set one. 29 U.S.C. § 1348(a)(3), (4). Courts use a two-step process for establishing a termination date, taking into account (1) "the expectations of the plan participants" and (2) "the financial implications of the termination for PBGC." *See PBGC v. Republic Techs. Int'l., LLC*, 386 F.3d 659, 665 (6th Cir. 2004) (collecting authorities). In that process, courts first determine the earliest date by which the plan participants had actual or constructive notice of termination, since such actual or constructive notice is seen as effective to extinguish reliance interests. *See Republic Techs.*, 386 F.3d at 666; *PBGC. v. Broadway Maint. Corp. (In re Pension Plan for Employees of Broadway Maint. Corp.)*, 707 F.2d 647, 652-53 (2d Cir. 1983); *see also Eckstein v. Balcor Film Investors*, 58 F.3d 1162, 1168 (7th Cir. 1995) (defining constructive notice as "not actual knowledge, but the ability to acquire knowledge by reasonably diligent inquiry"). Courts then select that date unless a later one better serves the interests of PBGC. *See Republic Techs.*, 386 F.3d at 667-68.

Rule 56(d) allows a court to narrow the issues for trial by determining facts not in controversy even when summary judgment cannot be granted. Fed. R. Civ. P. 56(d), incorporated by reference in Fed. R. Bankr. P. 56. *See Doctors Hosp. v. Desnick (In re Doctors Hosp.)*, Adversary No. 02 A 00363 (Bank. No. 00 B 11520), 2005 WL 2347899 (Bankr. N.D. Ill. Sept. 22, 2005); *Carillo v. Bridgestone/Firestone, Inc.*, No. IP 00-9373-C-B/S, IP 00-5005-C-B/S, 2002 WL 1011781 at *1 (S.D. Ind. May 13, 2002); *First Nat'l Ins. Co. v. F.D.I.C.*, 997 F. Supp. 1051, 1055 (S.D. Cal. 1997). Because there are no genuine issues of fact for trial, an order pursuant to Rule 56(d) is appropriate here to establish a termination date.

The undisputed facts demonstrate that the participants of the Pilot Plan received notice sufficient to extinguish any justifiable expectation that the plan would continue. The Notice of Determination was sent by PBGC on December 29, 2004, and received by ALPA the next day, December 30, 2004. Also, on December 30, 2004, the Notice of Determination was published in newspapers throughout the country. In addition, PBGC, United and ALPA, published press releases announcing PBGC's decision to seek termination of the Pilot Plan.

United argues that the reasonable expectations of the plan participants weighed so heavily against PBGC's proposed termination date that their expectations should override the impact of notice. However, that is not the applicable standard. *See Republic Techs.*, 386 F.3d at 666 (reversing a ruling that "PBGC's notice to the participants did not presumptively terminate the participants' reliance interests" and noting that "[e]very court to consider the issue has concluded that expectation interests in the accrual of benefits are extinguished on the date the participants receive reasonable notice from PBGC that the plan is going to be terminated"). The Pilot Plan participants' expectation interests were extinguished on December 30, 2004, when they received reasonable notice from PBGC that it was seeking termination of the Pilot Plan. Moreover, PBGC was not required, as ALPA suggests, to provide individualized notice to each of the approximately 15,000 participants of the Pilot Plan.

To answer the second question—what date serves the interests of PBGC—the court need look no farther than PBGC's proposed date. *See PBGC v. Mize Co., Inc.*, 987 F.2d 1059, 1063 (4th Cir.1993) ("PBGC's interests should be deemed to be best served by the date proposed by PBGC.") There is no question that PBGC is better served by the December 30 date than some later date, and so the requirements for an effective notice on tht date have been satisfied.

## Conclusion

For the reasons stated above, the question of whether plan termination is appropriate must be adjudicated at trial but PBGC is entitled to an order establishing that its notice of December 30, 2004 termination date was effective. A separate order has been entered consistent with this decision.

Dated: October 26, 2005

Eugene R. Wedoff
United States Bankruptcy Judge